**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**

IN THE
# UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Case No. 15-1003

LAWRENCE BEHR
*Appellant*

v.

FEDERAL COMMUNICATIONS COMMISSION
*Appellee*

On Appeal from an Order of
The Federal Communications Commission

**BRIEF FOR APPELLANT LAWRENCE BEHR**

Donald J. Evans
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street – 11th Floor
Arlington, Virginia 22209
(703) 812-0400

*Counsel for Appellant Lawrence Behr*

June 22, 2015

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

LAWRENCE BEHR )
            *Appellant* )
)
)
v. )     Case No. 15-1003
)
FEDERAL COMMUNICATIONS COMMISSION )
            *Appellee* )

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Appellant, Lawrence Behr ("Behr"), by his attorneys, certifies as follows:

**A.      Parties and Amici.**

No parties other than Behr appeared in the proceedings before the Federal Communications Commission.

The following parties are before this Court:

1.     Lawrence Behr

2.     Federal Communications Commission

Behr is a natural person.

**B.      Ruling Under Review**

The ruling under review is *In the Matter of Lawrence Behr Application for Modification of 220-222 MHz Station WPWR222*, 29 FCC Rcd 15925 (2014. [Jt. Appendix at 1].

## C.    Related Cases

There are no related cases presently before this Court

Respectfully submitted,

By: _____

Donald J. Evans
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street – 11th Floor
Arlington, Virginia  22209
(703) 812-0400

*Counsel for Appellant Lawrence Behr*

June 22, 2015

## DISCLOSURE STATEMENT PURSUANT TO RULE 26.1

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Rules of this Court, Behr provides the following information:

Behr is a natural person.  He is the applicant whose application for modification of license was partially granted and partially denied by the FCC dismissed by the FCC.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ............. i

DISCLOSURE STATEMENT PURSUANT TO 26.1 ............................................. iii

TABLE OF AUTHORITIES ................................................................................ iv

GLOSSARY .......................................................................................................... vi

JURISDICTIONAL STATEMENT ..................................................................... vii

ISSUES PRESENTED FOR REVIEW ................................................................. 1

PERTINENT FCC REGULATIONS .................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

STANDARD OF REVIEW ..................................................................................... 7

SUMMARY OF THE ARGUMENT ...................................................................... 8

STATEMENT REGARDING STANDING .......................................................... 10

ARGUMENT ........................................................................................................ 10

    I.    The FCC Request for a Waiver was Part of the FCC
        Application ................................................................................... 10
        1.    The Commission's Procedural Rules Require
                Waiver Requests Associated with Licenses to be
                Filed in Applications ...................................................... 10
        2.    The Actual Application Includes the
                Waiver Request ............................................................. 11
        3.    The FCC Has Acknowledged that the
                Waiver Request was Part of the Application ................. 12
        4.    The Waiver Request was Nowhere Else ........................ 13

    II.    Effect of Partial Grant and Partial Denial ................................. 14

III.    The Denial of a Separate Part of an Application is a
Denial of a Part of the Application .......................................... 16

CONCLUSION AND PRAYER FOR RELIEF .................................................. 17

CERTIFICATE OF COMPLIANCE ........................................................ 19

CERTIFICATE OF SERVICE .............................................................. 20

# TABLE OF AUTHORITIES

Page

**CASES**

*Buckley-Jaeger Broadcasting Corporation of California v. FCC,*
397 F. 2d 651 (D.C. Cir. 1968) ................................................................15,16

*\*Central Television, Inc. v. FCC,*
834 F. 2d 186 (DC Cir. 1987) ...........................................................8,15,16

*Johnson v. U.S.,* 628 F.2d 187, 202 (D.C. Cir. 1980)................................8

*Mobile Communications Corp. of America v. FCC,*
77 F. 3d 1399 (DC Cir. 1996),
cert. denied, 519 U.S. 823 (1996) ....................................................8,15

*Permian Basin Area Rate Cases,*
390 U.S. 747, 792, 88 S.Ct. 1344 1373,
20 L.Ed.2d 312 (1968) ......................................................................7

*Polcover v. Secretary of the Treasury,*
477 F.2d 1223, 1226-27 (D.C.Cir.),
cert. denied, 414 U.S. 1001, 94 S.Ct. 356,
38 L.Ed.2d 237 (1973) ......................................................................7

*Richardson v. Perales,* 402 U.S. 389, 401,
91 S.Ct. 1420 1427, 28 L.Ed.2d 842 (1971) .................................7,8

**STATUTES**
*None*

**AGENCY DECISIONS**

*Donald J. Evans, Esq.,* 22 FCC Rcd 1798
(WTB 2007) ......................................................................................14

*Lawrence Behr, Order on Reconsideration,*
24 FCC Rcd 7196 (WTB 2009) .........................................................7

*Lawrence Behr, Memorandum Opinion and Order,*
29 FCC Rcd 15925 (2014) ..................................................vii,3,7,12,16

*\*Murray Hill Broadcasting Company,*
71 RR2d 1335 (1993) .......................................................................14

*Authorities on which we chiefly rely are marked with asterisks.

iv

## PERTINENT FCC REGULATIONS

*47 C.F.R. § 1.110……………………………………………..1,6,9,14,15,16,18

*47 C.F.R. § 1.925………………………………………………1,10, 12

47 C.F.R. §90.725(f) ……………………………………………4,5

47 C.F.R. 90.757……………………………………………………..4

47 C.F.R. 90.767……………………………………………………..4

*Authorities on which we chiefly rely are marked with asterisks.

# GLOSSARY

FCC                                Federal Communications Commission

## JURISDICTIONAL STATEMENT

This is an appeal by Behr of a final order of the Federal Communications Commission ("FCC"), *In the Matter of Lawrence Behr Application for Modification of 220-222 MHz Station WPWR222, Memorandum Opinion and Order*, 29 FCC Rcd 15925 (2014) (the "*MO&O*"), which denied Behr's demand for the hearing mandated by Section 1.110 of the FCC's rules.

This Court has jurisdiction pursuant to 47 U.S.C. § 402(b)(1) because the FCC's action constitutes a denial of a license modification application by the FCC. The appeal is timely under 47 U.S.C. §402(c), having been filed within 30 days of December 17, 2014, the release date of the FCC action.

The FCC's *MO&O* is a final agency order that disposes of all claims.   No petitions for reconsideration or other pleadings are pending before the FCC.

## ISSUES PRESENTED FOR REVIEW

1.     Where a license modification application requests modification of the build-out period denoted on the license along with other minor modifications, does the denial of the build-out part of the application, coupled with the grant of the remainder of the application, constitute a partial grant and partial denial of the application?

2.     If an application is partially granted and partially denied, is the FCC required, on the applicant's request, to vacate its original action and designate the application for hearing, as provided by its own rules?

## PERTINENT FCC REGULATIONS

The two FCC regulations pertinent to this appeal are set forth below.

### 47 C.F.R. § 1.110 Partial grants; rejection and designation for hearing.

Where the Commission without a hearing grants any application in part, or with any privileges, terms, or conditions other than those requested, or subject to any interference that may result to a station if designated application or applications are subsequently granted, the action of the Commission shall be considered as a grant of such application unless the applicant shall, within 30 days from the date on which such grant is made or from its effective date if a later date is specified, file with the Commission a written request rejecting the grant as made. Upon receipt of such request, the Commission will vacate its original action upon the application and set the application for hearing in the same manner as other applications are set for hearing.

**47 C.F.R. § 1.925**

§1.925 Waivers.

*(a) Waiver requests generally.* The Commission may waive specific requirements of the rules on its own motion or upon request. The fees for such waiver requests are set forth in §1.1102 of this part.

*(b) Procedure and format for filing waiver requests.*

(1) Requests for waiver of rules associated with licenses or applications in the Wireless Radio Services must be filed on FCC Form 601, 603, or 605.

(2) Requests for waiver must contain a complete explanation as to why the waiver is desired. If the information necessary to support a waiver request is already on file, the applicant may cross-reference the specific filing where the information may be found.

(3) The Commission may grant a request for waiver if it is shown that:

(i) The underlying purpose of the rule(s) would not be served or would be frustrated by application to the instant case, and that a grant of the requested waiver would be in the public interest; or

(ii) in view of unique or unusual factual circumstances of the instant case, application of the rule(s) would be inequitable, unduly burdensome or contrary to the public interest, or the applicant has no reasonable alternative.

(4) Applicants requiring expedited processing of their request for waiver shall clearly caption their request for waiver with the words "WAIVER—EXPEDITED ACTION REQUESTED."

*(c) Action on Waiver Requests.*

(i) The Commission, in its discretion, may give public notice of the filing of a waiver request and seek comment from the public or affected parties.

(ii) Denial of a rule waiver request associated with an application renders that application defective unless it contains an alternative proposal that fully complies with the rules, in which event, the application will be processed using the alternative proposal as if the waiver had not been requested. Applications rendered defective may be dismissed without prejudice.

2

## STATEMENT OF FACTS

As set forth in far greater length in the *MO&O*, the Behr application was originally filed in 1991 in an epoch when the FCC still selected licensees by lottery. The application was selected in the lottery in 1992 and was duly and timely amended to correct some minor defects identified by the Commission staff, which should have then permitted immediate grant of the application. Instead, the application was "misplaced" by the staff. In 1996, Behr inquired of the staff what was happening with his application and was advised for the first time that the application had not been timely amended and therefore was no longer pending. Behr promptly sought reconsideration of that decision, supplying a date-stamped copy of the amendment demonstrating conclusively that it had been timely filed. The staff refused to reconsider its action, and Behr timely appealed that action to the full Commission. The FCC mulled that over for another six years, extending the pendency of the application into a different decade, century and millennium from when it had been filed. Nevertheless, the FCC at last did the right thing by acknowledging its error, granting the application, and issuing a license.

After some further confusion at the staff level about why Behr had not built out the station immediately after he got the license, the FCC staff added a new build out period to the license in May of 2003:

3

In addition, a buildout deadline has been added to the license. Denise Walter informed their attorney Don Evans they should not respond to the audit and that a *buildout deadline would be added to the license*. tlf 5/21/03

(Emph. added) See "Comments at page 1 of the FCC Administration database for WPWR222 (Jt. App. at 71). The license therefore explicitly specified the twelve month build out period that had applied to licenses of this type back in the early '90s.

The original service rules for the 220 MHz band contemplated transmission from a single fixed location, something which could readily be accomplished in a one year period. But in the intervening decade the FCC had moved to the more modern wireless service paradigm where licensees are allowed to build numerous sites within their authorized service areas, thus permitting more efficient and intensive re-use of the spectrum bands. Because of the obviously greater complexity of such an undertaking, the FCC now normally allows five to ten years for licensees to effect such build outs.[1] Behr therefore promptly filed an application in June, 2003 seeking to modify the license to specify the five year/ten year build out period which was more in accord with the 21st century licensing

---

[1] Compare the build-out period applicable to non-nationwide Phase I licensees in Sections 90.725(f) and 90.757 of the rules (12 months) with that afforded in Section 90.767 to non-nationwide (Economic Area) licensees granted under the modern Phase II licensing paradigm: five years to serve one-third of the license area's population and ten years to serve two-thirds of the population.

scheme. (The FCC Reference Copy of this application can be found at Jt. App. p. 42) The application included an attachment denominated "Petition for Waiver of Section 90.725 of the Commission's Rules." A waiver of the FCC's rules was necessary to accommodate the requested extended buildout period because the FCC's 1992-era rules had not provided for or contemplated build-outs taking longer than 12 months. The waiver petition was not filed anywhere but in the modification application in which it was incorporated, as the FCC's rules required. In addition to the requested modification to the specified build-out period, this application also included non-substantive material such as the address of the contact representative and the nature of the proposed service, information that had not been called for on the old form 574 that had been in use a decade before but which were now a required part of the applicable FCC form (Form 601).[2] This is where things took an even more bizarre turn.

    In November, 2003, Behr's license modification application was granted to the extent that it had requested addition of several ministerial elements to the

---

[2] Behr erroneously indicated in pleadings before the Commission that this substantive modification was the only thing requested. As indicated above, there were some administrative changes to the license such as addresses and other information which had not appeared in the original application and which Behr perceived as just filling in necessary information rather than requesting modifications. But in any case there is no dispute that the FCC granted the application without granting the build-out extension.

license, but the FCC denied the substantive part of the application that had

requested the extended build-out treatment. Faced with a partial grant and partial

denial of the application, Behr timely invoked the only vehicle for review

permitted by the FCC's rules: rejection of the partial grant and demand for a

hearing under 47 C.F.R. Section 1.110 of the rules. That section provides as

follows:

> Where the Commission without a hearing grants any application in part, or with any privileges, terms or conditions other than those requested,…the action of the Commission shall be considered a grant of such application unless the applicant shall, within 30 days from the date on which such grant is made or from its effective date if a later date is specified, file with the Commission a written request rejecting the grant as made. Upon receipt of such request, the Commission will vacate its original action on the application and set the application for hearing in the same manner as other applications are set for hearing.

The FCC denied the request for a hearing, indicating that Section 1.110 did not

apply since the application had been granted in full. (January 31, 2007 Letter

Order. (Jt. Appendix at 37).

Perplexed, Behr sought reconsideration of what appeared to be an obvious

error. Indisputably, the application had _not_ been granted in full since the only

substantive modification requested in the application – extension of the build-out

period – had been denied. Two years later, the FCC denied reconsideration, again

insisting that the application _had_ been granted in full and therefore Behr's only

avenue of redress in 2003 had been a petition for reconsideration or application for

6

review. (May 27, 2009 *Order on Reconsideration*, Jt. App at 28)  Behr thereupon gave up at the Bureau level and sought review by the full Commission in June, 2009.  The full Commission spent the next five and half years examining Behr's unopposed 8-page application for review, of which less than six pages were argument.  The result is the *MO&O* which is now before the Court.

## STANDARD OF REVIEW

The FCC's order is unlawful in two key respects: (1) Its finding that the waiver part of the application was not part of the application is contrary to substantial evidence in the record.  Indeed, even the FCC now concedes that the waiver part of the application was "incidental[ly]" included in the application. (*MO&O* at Para. 22; Jt. App. at 10)  As set forth in *Permian Basin Area Rate Cases*, 390 U.S. 747, 792, 88 S.Ct. 1344 1373, 20 L.Ed.2d 312 (1968), the Court must determine "whether each of the order's essential elements is supported by substantial evidence."  The determination involves a determination that there was substantial evidence to support the FCC's action and that the Commission was not arbitrary or capricious in some other respect. *Polcover v. Secretary of the Treasury*, 477 F.2d 1223, 1226-27 (D.C.Cir.), cert. denied, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973). "Substantial evidence" is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' "*Richardson v.*

*Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 1427, 28 L.Ed.2d 842 (1971). *Johnson v. U.S.,* 628 F.2d 187, 202 (D.C. Cir. 1980).

(2) Once that plain factual error is established, the FCC's failure to obey the mandate of its own rules is contrary to law. Both this Court and the FCC have repeatedly held that an applicant cannot accept the parts of an application he likes and at the same time appeal the parts he doesn't like. *Central Television, Inc. v. FCC*, 834 F. 2d 186 (DC Cir. 1987); *Mobile Communications Corp. of America v. FCC*, 77 F. 3d 1399 (DC Cir. 1996), cert. denied, 519 U.S. 823 (1996). While some deference is normally due to the Commission's interpretation of its own rule, the rule must be interpreted in accordance with the FCC's and this Court's prior rulings. Here the FCC's refusal to acknowledge that the waiver portion of the application was part of the application necessarily led to a flawed application of its rule on how to deal with review of such situations. It did not misinterpret its rule; it simply refused to apply it to the facts at hand. The Court therefore owes the FCC no deference in reviewing its error of law.

## SUMMARY OF THE ARGUMENT

The argument here is simple. Behr filed an application to modify a term of his license that prescribed a very abbreviated period to build out the facilities specified in the license. Such a license modification required a waiver of the rules. The FCC's application procedures require an applicant to make such a

waiver request in an application seeking the deviation from the rule. Behr duly

followed the procedure specified by the rules and included the waiver request in

his application. The application at issue also included some administrative

information which had not been included in the original license because the form

used when the license had originally been filed for did not require such

information.

The FCC ultimately granted the application but denied the waiver request

portion of the application. Because the FCC granted the application in part and

denied it in part, Behr duly followed the procedure required by Section 1.110 of

the FCC's rules: he rejected the partial grant and requested that the matter to be

referred to an administrative law judge. The FCC, while conceding that the waiver

request was "incidentally" included in the application, insists that Section 1.110 of

the rules does not apply because the application was granted in full. In fact, the

waiver request constituted the main substance of the application. Since the waiver

portion of the application was indeed part of the application, the FCC's partial

grant and partial denial necessarily triggered the application of Section 1.110 for

review purposes. The FCC was required to follow its own procedural rule.

The FCC also points to some cases where applicants tried to piggy-back

unrelated requests for extraordinary relief onto pending applications, thus seeking

to invoke Section 1.110. Those cases are inapplicable. The modification requested

9

by the waiver here applied directly to an express component of Behr's license which required a license modification to effectuate.

## STATEMENT REGARDING STANDING

Appellant Behr has lost a valuable license by the FCC's failure to designate the application for a hearing as required by its own rule. The Court can remediate that harm by directing the FCC to reinstate the application and either grant it or designate it for hearing before an Administrative Law Judge.

## ARGUMENT

### I.     The FCC Request for a Waiver was Part of the FCC Application

The resolution of this case hinges on a single fact: was the request to modify Behr's license to reflect a different build-out timetable a part of the Behr application or not? Because the FCC's resolution of that fact was manifestly contrary to the evidence of record, the Court should reverse. Four circumstances demonstrate conclusively that the requested modification (which required a waiver of the now-outdated rule) was part and parcel of the application.

### 1.    <u>The Commission's Procedural Rules Require Waiver Requests Associated with Licenses to be Filed in Applications</u>.

47 C.F.R. Section 1.925(b)(1) of the FCC's rules provides as follows:

> Requests for waivers of rules associated with licenses or applications in the Wireless Radio Services *must* be filed on FCC Form 601, 603 or 605.

(Emph. added.)   Because the FCC's rules expressly required this kind of waiver request to be filed in the form of an application (in this case, Form 601), Behr understandably did so.   Had the waiver request *not* been in an application, as required by the rules, it would presumably have been dismissed as defective by the Commission.  Instead, the Commission correctly accepted the application and processed it, duly noting in its electronic history of the application that the application was "offlined for waiver review."[3]

## 2. **The Actual Application Includes the Waiver Request**.

As further verification that the waiver was a part of the application at issue, we need only look at the application itself.  A reference copy of the application at issue may be found at pps 42-57 of the Jt. Appendix.  On page 1 of the application, the applicant is asked:

> 11a) Does this application include a request for a Waiver of the Commission's rule(s)?  If 'Yes', attach an exhibit providing rule number(s) and explaining circumstances.

> 11b) If 11a is a 'Y', enter the number of rule section(s) being waived.

Behr accurately answered "Yes" to 11a.  He answered "1" to 11b.  (The latter question is asked because the FCC charges fees upfront to process applications involving waivers based on the number of waivers that are requested.)   Behr

---

[3] See Jt. App p.73, a screen shot of the electronic history of the processing of the application appearing in the FCC's Universal Licensing System.

attached the required exhibit which explained the circumstances justifying the waiver. (Jt. App. at 51-57)   The exhibit was indisputably filed as, and described as, an element of the application.  Moreover, if the waiver request was not part of the application, how or why was the FCC charging a fee to process that part of the application?

### 3. <u>The FCC Has Acknowledged that the Waiver Request was Part of the Application.</u>

At Paragraph 22 of the *MO&O*, the Commission grudgingly acknowledges that the waiver request was "incidental[ly] inclu[ded]" as an attachment to the application.   It is difficult to understand why the FCC views that exhibit to the application as an "incidental" inclusion since the exhibit addressed at length the only substantive change to the license that was requested in the application.  It was, in fact, the chief reason for filing the application in the first place.   The primacy of the waiver request portion of the application is underscored by Section 1.925(c) of the rules.  That rule provides that if the waiver portion of an application is denied and no alternative is requested by the applicant, the application is rendered defective and is subject to dismissal.  Behr did not request any alternative if the FCC denied the waiver because the waiver was the whole point of the application.  Unaccountably, the FCC granted the application rather than dismissing it, as rule 1.925(c) would seem to have required.  But in any case, whether it was merely an "incidental inclusion" as the FCC suggests or the very heart of the application, as

12

common sense suggests, the waiver is acknowledged by the FCC to have been included in, and therefore part of, the application.

### 4. **The Waiver Request was Nowhere Else**.

Finally, we must observe that the waiver portion of the application described above was filed nowhere else at the Commission but in the application. The waiver request had no independent life whatsoever; it existed solely as an essential component of the application in which it had been embedded. In short, there was nothing for the FCC to act on but the application, including the waiver request, which Behr had filed.

Since (i) the FCC's rules required the waiver request to be included in the application, (ii) the waiver request was in fact physically included in the application, (iii) the waiver request was expressly denominated as an exhibit in the application, (iv) the FCC charged a fee for processing the waiver request as part of the application, (v) the FCC processed the waiver request as a part of the application, (vi) the waiver request was filed nowhere else at the FCC but in the application, and (vii) the FCC has acknowledged that it was included in the application, there can be no rational basis for declaring it to be anything other than a part of the application. The FCC's finding to the contrary was therefore not only not supported by substantial evidence in the record, but irrational.

13

## II.    Effect of Partial Grant and Partial Denial

Given the forgoing facts, the FCC's doggedly held position that the requested modification set forth in the waiver exhibit was *not* a part of the application is frankly inexplicable.[4] If, as even a cursory review of the facts compels, the waiver request is deemed to be part and parcel of the application, then the application of Section 1.110 of the rules to Behr's avenues of appeal is inescapable.  If Behr had not rejected the grant of the application as made, operation of Section 1.110 would have deemed that to be *acceptance* of the grant as made, foreclosing any right to challenge the denial of the substantive license modification requested in the application.

The FCC has very consistently required applicants to adhere to the requirement of Section 1.110.  *Murray Hill Broadcasting Company*, 71 RR2d 1335 (1993).  ("An applicant may not, on the one hand, accept a Commission grant *and*, on the other hand, seek an administrative appeal of the authorization." (Emph. in

---

[4] The FCC candidly noted in its initial January 31, 2007 rejection of Behr's demand for the hearing mandated by Section 1.110 its displeasure with the operation of that section.  The FCC complained that if everybody whose request for relief "that happened to be attached to an application" sought a hearing under Section 1.110, numerous hearings would ensue.  "The public interest would be ill served if the Commission were required to devote its limited resources to conducting Section 1.110 hearings *ad nauseam*." *Letter to Donald J. Evans*, Jan. 31, 2007, DA 07-434. (Jt. Appendix at 37)  But here the FCC appears to be upbraiding Behr for pursuing the very course required by the Commission's own rules.  The solution to the Commission's problem is to amend or delete Section 1.110, not complain that its straightforward application might create burdensome hearings.

14

original). This Court has consistently agreed that Section 1.110 "does not allow applicants first to accept a partial grant, yet later to seek reconsideration of its conditions." *Central Television, Inc. v. FCC*, 834 F. 2d 186, 191 (D.C. Cir. 1987), citing a host of other cases that are in accord.  Indeed, the Court noted in *Mobile Communications Corp. of America v. FCC*, 77 F.3d 1399, 1404 (D.C. Cir. 1996), cert denied, 519 U.S. 823 (1996) that an applicant would normally be barred from seeking judicial review of the FCC's action if it failed to follow the mandatory administrative exhaustion requirement of rejecting the grant as made.

The FCC's heavy reliance on *Buckley-Jaeger Broadcasting Corporation of California v. FCC*, 397 F. 2d 651 (D.C. Cir. 1968) is obviously misplaced.  In *Buckley-Jaeger*, a broadcast applicant had requested a waiver of the FCC's program non-duplication rule in connection with its license renewal application. Unlike the situation here, the non-duplication rule is not an express element of the license being renewed; it is simply a rule of general application that applies to all broadcast stations.  Grant of the waiver would not have resulted in any modification of the license involved but rather an exemption from application of a rule applicable to all broadcasters.   Here the build-out timetable was an expressly stated provision of Behr's existing license for which a modification was requested.

Moreover, in *Buckley-Jaeger*, the FCC's rules did not require the waiver request to be included in the renewal application at issue.   The applicant there had

15

simply filed the waiver request at the same time as its application. This Court

therefore correctly ruled that the applicant had gotten the full renewal authorization

it had requested, and Section 1.110 was not implicated. *Id.* at 656. By contrast,

Behr's waiver request *had* to be included in an application and Behr was denied

the only substantive modification requested in that application. *Central Television*

rather than *Buckley-Jaeger* is clearly the controlling authority.

### III.    The Denial of a Separate Part of an Application is a Denial of a Part of the Application.

At Paragraphs 21-25 of the *MO&O*, the Commission opines that the waiver

request was an independent request from the other parts of the application which

were unconnected to the waiver request.   Therefore, the full grant of those

portions of the application that *were* granted constituted a "full grant of all the

modifications requested in the application" rather than a partial grant which would

have triggered Section 1.110 rights.   This reasoning demonstrates the outrageous

lengths to which the FCC was stretching to try to avoid the invocation of its own

procedures.

There are 57 different elements of the Main Schedule of Form 601 which

require a response.   These elements are arranged in about 16 different subject

categories.  The numerous schedules that must be attached to the Main Form,

depending on which modifications are being requested, add scores of other

information capsules to the application form.   *All of these elements are*

16

*independent from each other*. An applicant's address is independent from his alien ownership status; the name and phone number of his contact representative is independent from whether the applicant is exempt from fees or is a Native Hawaiian.

Yet the FCC would actually have us believe that because these elements are "independent" from each other and could be granted without necessarily granting the other parts of the application, the grant of some elements without the grant of other elements constitutes a "full grant" of the application. In other words, granting a part of the application constitutes a full grant of the application, as long as the parts are independent from each other. But what then becomes of the independent parts of the application that were actually denied? When a federal agency declares that a partial grant of an application is really a full grant of the application, we have moved beyond the realm of rational discourse into an Orwellian world where "Newspeak," as used by the government, is some language other than English.

### CONCLUSION AND PRAYER FOR RELIEF

Both Behr and his counsel have spent a biblical generation trying to straighten out what seemed like simple FCC errors whose correction would permit Behr to go forward, build, and operate his station. Behr specifically requested that the full Commission simply act favorably on the waiver request itself, obviating

17

the need for further proceedings before an ALJ, but the Commission declined in view of its adamant position that, by following the procedure prescribed by Section 1.110, Behr had not preserved his right to review.  Behr therefore respectfully requests the Court to restore some sanity to this curious case by reversing the Commission's determination that the waiver request was not part of the application and directing the Commission to either grant the relief requested in the application or present the matter to an Administrative Law Judge for hearing as required by its rules.  Alternatively, the Court should rule that since the FCC adamantly insists that the modification application was granted in full, it should be directed to give effect to the extended build-out modification that was requested in that application. That would put a quick and just end to this proceeding.

Respectfully submitted,

By: _____
Donald J. Evans

FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street – 11th Floor
Arlington, Virginia  22209
(703) 812-0400

*Counsel for Appellant Lawrence Behr*

June 22, 2015

18

## CERTIFICATION AS TO WORD COUNT

Pursuant to Fed. R. App. P. 32(a)(7)(c) and Circuit rules 28 and 32(a), I hereby certify that the foregoing Brief was produced using Times New Roman typeface and, based on the word count utility that is part of Word 2013, contains 5,013 words.

Donald J. Evans

## CERTIFICATE OF SERVICE

I, Donald J. Evans, hereby swear that true copies of the foregoing BRIEF

FOR APPELLANT LAWRENCE BEHR was served by electronic delivery via

CM/ECF system this 22nd day of June, 2015, to the following:

C. Grey Pash, Jr., Esq.
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Richard Kiser Welch, Esq.
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Donald J. Evans

20