ORAL ARGUMENT HAS NOT BEEN SCHEDULED

IN THE
# UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Case No. 15-1003

LAWRENCE BEHR
*Appellant*

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Appellee*

On Appeal from an Order of
The Federal Communications Commission

**FINAL REPLY BRIEF OF APPELLANT
LAWRENCE BEHR**

Donald J. Evans
FLETCHER, HEALD & HILDRETH, P.L.C.
1300 North 17th Street - 11th Floor
Arlington, Virginia  22209
(703) 812-0400

*Counsel for Appellant Lawrence Behr*

Reply Brief filed: August 13, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

SUMMARY OF ARGUMENT ............................................................................ 1

ARGUMENT .........................................................................................................3

        A.     The Waiver Request was Part of the License
              Modification Application ............................................................3

        B.     Independent Parts of the Application...........................................5

        C.     The Build-Out Period was an Express Element
              of the License ..............................................................................6

        D.     History of the License ................................................................ 8

CONCLUSION ......................................................................................................8

CERTIFICATE OF COMPLIANCE .................................................................. 10

CERTIFICATE OF SERVICE ............................................................................ 11

# TABLE OF AUTHORITIES

<u>Page</u>

**CASES**
*Buckley-Jaeger Broadcasting Corporation of California v. FCC,*
397 F. 2d 651 (D.C. Cir. 1968) ……………………………………………2,6,7,8


**AGENCY DECISION**
*Lawrence Behr, Memorandum Opinion and Order*,
29 FCC Rcd. 15925 (2014) ………………………………………………4,6


**PERTINENT FCC REGULATIONS**
47 C.F.R. 1.110 (2014) …………………………………………………2,6,8

*47 C.F.R. 90.725 ……………………………………………………………..3

*47 C.F.R. 1.925 (2014) ……………………………………………………3

*Authorities upon which we chiefly rely are marked with asterisks.

## SUMMARY OF ARGUMENT

The FCC's Opposition is more notable for what it fails to address than what it does address. It scrupulously avoids any refutation of the multiple indicia demonstrating that the license modification requested by the waiver was part of the license modification application, which indicia include (i) its own rules requiring the inclusion of the waiver request, (ii) the clear characterization of the waiver request in the application as an exhibit to the application, (iii) the application fee that the FCC charged to process the waiver as part of the application, (iv) the way that the FCC did process the application, and (v) the FCC's own admission that the waiver was an inclusion in the application. Absent anything to the contrary, there is no basis in the factual record to treat the waiver request as anything but a part of the application in which it was filed.

The FCC also failed to address the seemingly obvious fallacy in its theory that the grant of some parts of an application constitutes a "full" grant of the application as long as the parts that were granted are "independent" from the parts that were denied.

Where the FCC does address Behr's arguments, it does so inaccurately. It plainly mis-states the record in characterizing the build-out period as not being an element of Behr's license. The Commission's staff had indisputably modified Behr's license to specify the build-out period which Behr later sought to modify

1

and so informed undersigned counsel. This error completely undermines any reliance on *Buckley-Jaeger Broadcasting Corporation of California v. FCC*, 397 F. 2d 651 (D.C. Cir. 1968) to support the Commission's action because there the waiver petition related to a general rule governing broadcasters and was not an element of the license for which a renewal application had been filed.

Finally, the FCC chides Behr for reciting the tortured history of this license because that history is irrelevant to the issue before the Court – whether he followed the correct procedure in demanding a hearing under §1.110 of the FCC's rules. The full Commission never considered the substantive grounds and equities supporting Behr's waiver request, despite his plea for it to do so. Instead, it hid steadfastly behind Behr's alleged failure to follow a more conventional appeal route rather than the one avenue allowed by its rules under these circumstances. That left only the FCC's failure to follow its own procedural rules as a matter for this Court's review. But the history of the license, including the decades-long delay in action on Behr's original application and the subsequent delays in processing his appeal, explain why a waiver was so fully justified. It makes no sense to apply a long-discarded 20th century regulatory paradigm to a 21st Century license.

# ARGUMENT

## A. The Waiver Request was Part of the License Modification Application

The FCC invites the Court here to engage in what film theorists would call a willing suspension of disbelief. Before us we have an application which is set forth at pp. 42-57 of the Joint Appendix.[1] To the naked eye, that application appears to be comprised of seven pages of questions on Form 601 and a seven page exhibit entitled "Petition for Waiver of Section 90.725 of the Commission's Rules." That application was filed as a single, unitary document with the FCC. The first page of the application asks if the application includes a waiver request, to which the applicant answered "yes." (JA 42). The same question requires that if the answer was "yes," the applicant must attach an exhibit providing rule number(s) and explaining circumstances. Anyone examining that application might very easily conclude that the "Petition for Waiver" was indeed the "waiver request" which the applicant represented was included in the application and which the application form itself required to be attached as "an exhibit."

If we have any doubt about our eyes deceiving us, we could turn to §1.925(a) of the Commission's rules which requires waiver requests associated

---

[1] Note that the material appearing at JA 50 was not in the original application but appears as part of the FCC's current reference copy of the application.

3

with wireless licenses to be filed on FCC Form 601. Since the requested waiver was associated with a wireless license, a waiver request was indeed filed on application Form 601. This is that application. No other application including this waiver request was submitted to the FCC. The FCC attempts to casually dismiss this requirement that the waiver request be part of the application as "simply an administrative choice." (FCC Brief at 25). It may have been an administrative choice to adopt the rule, but the fact is that FCC made it a requirement that waiver requests be part of the application, even providing that the denial of the waiver request makes the application defective.

Just to be extra sure, we might also check the FCC's administrative notes regarding the processing of the application. (JA 73). That history shows the FCC routinely accepting the application to modify the subject license, noting that "Y" was checked for the waiver question, offlining the application for waiver review, and completing the waiver review—all as part of the FCC's processing of the modification application.

Finally, we could take some comfort in the FCC's own description of the waiver request in the Order under review[2] as an "incidental inclusion" in the

---

[2] *Lawrence Behr, Memorandum Opinion and Order*, 29 FCC Rcd. 15925 (2014) ("MO&O").

application. (JA 10 at para. 22). We might question the "incidental" characterization since the waiver request consumed 50% of the volume of the application and was the only substantive modification requested, but at least the FCC acknowledged, however grudgingly, that the waiver request was indeed "included" in the application. All available evidence thus confirms what our eyes seem to be telling us – that the waiver request was indeed included in the application.

The FCC asks the Court to accept that the waiver request was not actually part of the application. Yet it offers no rational basis whatsoever on which one could reach that conclusion in contravention of all of the pertinent facts. The Court should therefore decline the Commission's invitation to enter the Twilight Zone.

## B. Independent Parts of the Application

Perhaps because the FCC had some doubts itself about its stance that the waiver request was not part of the application, it also grounded its decision on a separate conclusion. (JA 9-10, paras. 22-24). The reasoning here is that the waiver request and the other items in the application were separate and independent "requests." So the grant of some but not all of the independent requests in the application would therefore constitute a full grant of the application, rather than a partial grant. The denial of other independent parts of the application would not constitute a partial denial of the application because the other

5

independent parts had been fully granted. To its credit, counsel for the FCC has not even attempted to defend or explain this proposition, which is absurd on its face. The less said on this point, the better.

### C. The Build-Out Period was an Express Element of the License

The FCC relies heavily both here and in the MO&O on the application of *Buckley-Jaeger* to the case. In that case, a licensee filed an application for renewal of its license. At the same time it petitioned for a waiver of the AM-FM non-duplication rules which generally prohibited duplication of programming between co-owned stations. When the FCC granted the renewal but denied the waiver, the licensee demanded a hearing under the provisions of §1.110 of the rules. The Commission rejected that demand and this Court correctly held the Commission had granted the renewal, which was all that had been requested in the application, and therefore the denial of the separately filed waiver request did not trigger the need for a hearing.

As Behr noted in its Brief, *Buckley-Jaeger* is easily distinguishable because the waiver request there was neither incorporated in the application at issue nor was it required to be so incorporated, as was the case here. The applicant really did get all it had asked for. But the FCC's Brief now makes the astonishing assertion that the build-out period that was the subject of the waiver request was not an actual element of the Behr license. Behr's license did not have to be

6

modified in order to grant the waiver request, the theory goes, because the build-out period was not stated on the license.

This is astonishing because the FCC's brief grossly mis-characterizes the fact that a build-out deadline was affirmatively "added to the license" by the FCC staff in May of 2003, as confirmed by this staff notation in the official license file:

> In addition, a buildout deadline has been added to the license. Denise Walter informed their attorney Don Evans they should not respond to the audit and that a buildout deadline would be added to the license. tlf 5/21/03

(JA 71). The Commission somehow reads this notation as merely "indicating that the construction period for [Behr's] station, *established by rule*, began to run in January 2003." (FCC Brief at 17.) The notation indicates no such thing; it undeniably on its face says that the build-out period was added to the license and says nothing at all about the period established by rule. The staff confirmed this with a call to the undersigned. It was shortly thereafter that the license modification application at issue here was filed for the express purpose of modifying that element of the license.

So unlike *Buckley-Jaeger* and contrary to the FCC's claims, the build-out period was not merely a general rule that applied to everyone -- it was a binding feature of Behr's personal license. In order to change it, a modification application seeking a change in that feature had to be filed. That's why the waiver request was

7

part and parcel of the license modification application – not an extraneous request. *Buckley-Jaeger* does not apply.

### D. History of the License

Behr does not ask or expect the Court to rule on the merits of the waiver request filed back in 2003 because the full FCC chose not to address those merits. It avoided the merits on procedural grounds which have been shown to be flawed. But the sad pattern of administrative neglect which has dogged this application and license since its inception must ultimately bear upon the ALJ's eventual consideration of the waiver request. The original waiver was predicated on the substantial changes both in the industry and in the FCC's associated regulatory regime which took place during the decade that Behr's application was lost in administrative limbo. If a waiver based on changed circumstance made some sense in 2003, it makes even more sense now, more than a decade later.

## CONCLUSION

It has been established that the waiver request was part of the modification application. That leads to two possibilities for Court action. It can deem the application to have been partially granted and partially denied, thus making the hearing process specified by §1.110 of the rules applicable, or it can accept the FCC's adamant claim that the application was granted in full and simply direct that

the application as filed and granted should be given effect, including the requested build-out period. The latter would spare all concerned further proceedings in a case that is long overdue for final resolution.

                                      Respectfully submitted,

                                      Donald J. Evans

                                      FLETCHER, HEALD & HILDRETH, P.L.C.
                                      1300 North 17th Street – 11th Floor
                                      Arlington, Virginia  22209
                                      (703) 812-0400

                                      *Counsel for Appellant Lawrence Behr*

August 13, 2015

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,119 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman.

*[signature]*
Donald J. Evans

*Counsel for Appellant Lawrence Behr*

## CERTIFICATE OF SERVICE

I, Donald J. Evans, hereby certify that on August 13, 2015, I electronically filed the foregoing Final Reply Brief of Appellant Lawrence Behr with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system:

Jonathan Sallet General Counsel
David M. Gossett, Deputy General Counsel
Jacob M. Lewis, Associate General Counsel
Grey Pash, Counsel
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

_____
Donald J. Evans